**ABJO MOTORS, INC., doing business as Delray Shell Service Center, Plaintiff,**

v.

**SHELL OIL COMPANY, Robert Thomas, and Robert Gardner, Defendants.**

No. 93–8614–CIV.

United States District Court, S.D. Florida.

March 31, 1994.

---

Alan M. Medof, Fort Lauderdale, FL, for plaintiff.

George A. Nachtigall, Sr. Litigation Atty., Houston, TX, Karl Brandes, Holland & Knight, Tampa, FL, for defendants.

## ORDER

GONZALEZ, District Judge.

**THIS** CAUSE has come before the Court upon the plaintiff's Motion for Preliminary Injunction. The parties have fully briefed the motion, and affidavits and depositions have been filed. The Court heard oral arguments of counsel on March 10, 1994.

### Background

The plaintiff, ABJO Motors, Inc. ("ABJO"), doing business as Delray Shell Service Center, operates a retail gasoline marketing facility on premises owned by the defendant, Shell Oil Company, Inc. ("Shell"). The plaintiff occupies and operates the service station pursuant to certain written agreements entered into by the plaintiff and the defendant.

On November 18, 1993, the plaintiff brought this action against the defendants, alleging that Shell is attempting to drive it out of business by engaging in discriminatory pricing practices in violation of state and federal antitrust laws. The complaint also alleges that Shell is administering its Variable Rental Program in a discriminatory manner, and has intentionally failed to maintain the premises and equipment in proper condition, as is required by their written agreement.

On November 29, 1993, Shell sent a final notice of termination of ABJO's franchise, alleging that ABJO has failed to pay rent due. Consequently, ABJO filed this motion for preliminary injunction, requesting that the Court enjoin Shell from terminating its franchise agreement. ABJO argues that Shell's proposed termination of its franchise agreement is improper and illegal under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 *et seq.* Defendant Shell asserts that termination of the franchise is permitted by the PMPA.

### Discussion

In order to prevail on its motion for preliminary injunction, the plaintiff must show that (a) the franchise of which it is a party has been terminated, and (b) there exist "sufficiently serious questions going to the merits to make such questions a fair ground for litigation." 15 U.S.C. § 2805(b)(2); *Doebereiner v. Sohio Oil Co.,* 880 F.2d 329, 332–33 (11th Cir.1989). This phrase has been interpreted as a requirement that the franchisee prove "a reasonable chance of success on the merits." *Doebereiner,* at 333. In addition, the Court must find that, on balance, the hardships caused to the franchisor by the issuance of the injunction will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were denied. *Id.*

The parties agree that Shell has terminated ABJO's franchise. Thus, the Court must now determine whether there exist sufficient questions going to the merits to justify a preliminary injunction.

Section 2802(b)(2) of the Petroleum Marketing Practices Act enumerates acceptable grounds for termination or nonrenewal of a franchise relationship. One ground specified is:

> The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect....

15 U.S.C. § 2802(b)(2)(C). Section 2802(c) follows with an illustrative list of events that qualify under section 2802(b)(2)(C) as "an event which is relevant to the franchise relationship." One such event is "failure by the franchisee to pay to the franchisor in a time-

ly manner when due all sums to which the franchisor is legally entitled." 15 U.S.C. § 2802(c)(8).

According to the affidavit of defendant James R. Thomas, a Sales Manager for Shell, ABJO currently owes Shell approximately $36,115.36. ABJO does not claim that this amount has been paid, but asserts that Shell is not legally entitled to this sum. According to ABJO, Shell is arbitrarily determining rental charges under the guise of its Variable Rent Program, and the alleged amount due is based upon these arbitrary charges. ABJO also asserts that it is unable to pay the rent assessed because Shell has refused to maintain the station premises and equipment in good condition, in order to drive ABJO out of business. This has allegedly resulted in a decrease in the station's income, and an inability to pay the rent. Accordingly, ABJO argues that its nonpayment of rent was not a failure to pay within the meaning of 15 U.S.C. § 2802(c)(8), because it was a failure for a cause beyond its reasonable control.[1]

The provisions for payment of rent by ABJO to Shell are found in the Motor Fuel Station Lease and the Offer of Variable Rent Program. The Lease requires ABJO to pay monthly rent from May 1, 1991 through April 30, 1996 as follows:

| Period | Monthly Rent |
| --- | --- |
| From May 1, 1991 through April 30, 1992 | $ 7140.00 |
| From May 1, 1992 through April 30, 1993 | $ 7650.00 |
| From May 1, 1993 through April 30, 1994 | $ 8224.00 |
| From May 1, 1994 through April 30, 1995 | $ 8840.00 |
| From May 1, 1995 through April 30, 1996 | $ 9503.00 |

Shell's Variable Rent Program is a unilaterally offered voluntary program which requires no extra consideration on the dealer's part. According to its own terms, either the dealer or Shell may withdraw from the program at any time. The Variable Rent Program provides for a reduction in the rent owed by a dealer under its lease when the dealer purchases an amount of gasoline in excess of the amount specified by Shell. The rent charges are reduced in correlation with the amount of gasoline purchased.

Although ABJO argues that Shell has arbitrarily applied its Variable Rent Program to determine the amount of rent ABJO has been charged, it is undisputed that the rent charged is less than the amount which ABJO would be obligated to pay according its Lease. Thus, the Court does not agree with ABJO that Shell is not legally entitled to the $36,115.36 balance which remains unpaid.

The Court also disagrees with ABJO's argument that its failure to pay the rent does not provide grounds for termination under the Petroleum Marketing Practices Act, because its failure to pay was due to a "cause beyond its reasonable control." A franchisee's lack of funds to pay rent due, for whatever reason, simply cannot be characterized as a cause beyond the franchisee's reasonable control. To treat it as such would render Section 2802(c)(8) meaningless. *See California Petroleum Distributors v. Chevron U.S.A.*, 589 F.Supp. 282 (E.D.N.Y.1984).

In conclusion, the Court finds that, with regard to Shell's termination of ABJO's franchise agreement, there do not exist "sufficiently serious questions going to the merits to make such questions a fair ground for litigation." Accordingly, having reviewed the motion and the record, and being otherwise duly advised, it is hereby:

**ORDERED** and **ADJUDGED** that the plaintiff's Motion for Preliminary Injunction is hereby **DENIED.**

**DONE AND ORDERED.**

---

1. Section 2801(13) of the Petroleum Marketing Practices Act provides that the term "failure" does not include "any failure for a cause beyond the reasonable control of the franchisee."